**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| Lester Dobbey, Abdul Malik Muhammad, *et al*.,<br><br>Plaintiffs,<br>v.<br><br>William Weilding, *et al*.,<br><br>Defendants. | Case No. 13-cv-1068<br><br>Hon. Andrea R. Wood |

**DEFENDANTS' OPPOSITION TO
AFSCME COUNCIL 31's MOTION TO INTERVENE**

On August 19, 2021, *five months* after the Department of Corrections announced its plan to close and rebuild Stateville Correctional Center, and after multiple meetings and calls with AFSCME Council 31 officials concerning the State's closure plan and Plaintiffs' intent to seek emergency relief from this Court, the American Federation of State, County, and Municipal Employees, Council 31, AFL-CIO ("Council 31"), filed a motion to intervene under Rule 24(a)(2). ECF 389. Council 31's proposed intervenor complaint, ECF 390, would bring suit against the Department predicated on policy disputes under state labor law and Council 31's collective bargaining agreement. The Court should deny Council 31's motion to intervene because its proposed intervenor complaint is barred by the Eleventh Amendment, and the motion is untimely under controlling law. The State and Council 31 are scheduled to begin bargaining on these issues on Monday, August 26, 2024, giving Council 31 a full opportunity to present its concerns in an appropriate forum that is not this Court. The motion to intervene should be denied.

**BACKGROUND**

This case is an Eighth Amendment suit by a certified class of individuals incarcerated at Stateville Correctional Center seeking injunctive relief to remedy conditions they face there. ECF 35, 37. Since the early days of this case and through the present, the defendant officials (collectively, the "Department") have been attempting to reach a negotiated resolution with

Plaintiffs. *E.g.*, ECF 116, 370. Despite these efforts, Plaintiffs recently moved for a preliminary injunction demanding a public plan to transfer all class members out of Stateville by September 20, 2024. ECF 372 at 2. The Department and Plaintiffs engaged in mediation concerning that motion. ECF 379, 381–383, 387. The Department determined that, in light of the deteriorated structural conditions at Stateville and the State's publicly announced plan to close and rebuild Stateville rather than spend taxpayer funds on futile and costly repairs, it would not oppose a narrowed preliminary injunction as "the least intrusive means necessary to correct the risk of harm." ECF 384 ¶¶ 9–10. Accordingly, on August 9, 2024, the Court entered an unopposed preliminary injunction directing the Department to transfer class members housed in Stateville's general housing units to other facilities by September 30, 2024, and to submit periodic reports on the status of the transfers. ECF 386 at 2–3.

That Stateville suffers from serious structural issues has been a feature of this litigation from the beginning. The operative amended complaint, filed January 7, 2014, alleges that Stateville housing units "pose[] a substantial risk of a complete collapse and/or a partial collapse of the overall building's structure." ECF 35 ¶ 100. On September 5, 2018, the Court appointed an independent structural engineer to produce an export report. ECF 173. A November 19, 2022 public status report reflected that all class members had been temporarily transferred out of Stateville due to water quality issues and that the parties disputed whether prisoners could be safely returned. ECF 314.

Public actions to address the conditions at Stateville intensified in early 2024. On March 17, 2024, the Department wrote a public letter to the Illinois Commission on Government Forecasting and Accountability ("COGFA") announcing the Department's proposal to close and rebuild Stateville, estimating that closure could happen as early as September 17, 2024 (180 days

from March 17 the notice letter). Exhibit 1 at 1.[1]

On multiple occasions following the Department's March 17 closure announcement, the Department reiterated publicly, and privately to Council 31 officials, both the State's plan to close Stateville and the possibility of court action in the *Dobbey* case that could result in an order requiring expedited transfers of individuals out of Stateville. For example, on March 28, 2024, the State's Deputy Director of Labor Relations, Erin O'Boyle, met with officials from IDOC and Council 31 in Joliet, Illinois, and discussed the State's announced plan to close and rebuild Stateville as well as developments in the *Dobbey* case. Exhibit 2 ¶ 4. The discussion included the fact that counsel for the *Dobbey* class were threatening to seek a preliminary injunction to expedite the transfer of class members from Stateville to other facilities. *Id*. Similar meetings among state and Council 31 officials took place on April 5 in Champaign and April 18 in Springfield. *Id*. ¶¶ 5– 6. These meetings also included discussion of class counsel's continuing threat to seek a court order to expedite transfers. *Id.*

On April 26, 2024, the Department publicly provided its "Recommendation for the Rebuild of Stateville Correctional Center" to address specific issues required to be considered by the State Facilities Closure Act, 30 ILCS 608/5-10. Exhibit 3. The Department's recommendation recognized that "[g]iven [Stateville's] age, condition, and outdated design, the continued use of Stateville is untenable for modern correctional standards." *Id*. at 3; *see also id*. at 8. The recommendation also discussed the employees likely to be affected by the closure and confirmed that those employees would be able to relocate to other Department facilities. *Id*. at 5. The recommendation also noted the possibility that Plaintiffs in this matter could "seek immediate removal of the incarcerated individuals from the premises." *Id.* at 5–6.

---

[1] The Court can take judicial notice of the State's official announcements. *See McFarland-Lawson v. Ammon*, 847 F. App'x 350, 355 (7th Cir. 2021).

The Department—and Council 31 officials—also appeared at public COGFA hearings that addressed the State's announced plan to close Stateville and developments in the *Dobbey* litigation. Agendas and audio recordings of those proceedings are publicly available on COGFA's website at *https://cgfa.ilga.gov/Resource.aspx?id=2372*. The first of these hearings was on May 10, 2024, where, with Council 31 officials present, the Department's acting director answered questions about the State's plan to close Stateville as early as September 2024. *Id*. Following the May 10 hearing, on May 24, Council 31 issued a press release and accompanying report expressing its disagreement with "IDOC's Closure Plans." *See* Exhibit 4; Exhibit 5 at 1 (both available at *https://afscme31.org/news/afscme-slams-stateville-logan-plans-at-hearing*).

The next public hearing was June 11, 2024. The Department's acting director reiterated the Department's plan to close Stateville as early as September 2024. *See* Exhibit 6, Tr. of 6/11/2024 hearing, at 22:6–12. The Department's general counsel also answered questions and explained that the Department's plan to close Stateville as early as September was prompted by several factors, including the threat of a court order in this case that could require the Department to move individuals out of Stateville on a schedule that the Department could not control. *Id.* at 28:6–29:4. Council 31's deputy director, Mike Newman, also spoke, confirmed that Council 31 had conducted its own review of the *Dobbey* case, and expressed his doubt that the Court would order individuals to be moved from Stateville on an expedited basis. *Id*. at 81:13–82:1.

As the Department had repeatedly publicly predicted and privately warned Council 31 officials, Plaintiffs filed a motion for a preliminary injunction on July 31, 2024. ECF 372, 373. Plaintiffs asked the court to require the Department to submit a plan by August 12, 2024 that outlined the transfer or release of all class members and to transfer or release all class members by September 20, 2024. ECF 372. In the wake of that filing, Department officials again met with Council 31 officials and allowed them to question the Department's counsel about the

Department's response to the motion, including its effort to try to negotiate the narrowest possible court order. *See* Ex. 2, O'Boyle Decl., ¶ 8.

On August 15, 2024, the Department issued notice to Council 31 that the Department was invoking the "layoff" provision of the collective bargaining agreement ("CBA") to formally commence bargaining concerning the Department's plan to close and rebuild Stateville. Ex. 2 ¶ 9; Exhibit 7 (layoff notice). Negotiations are scheduled to begin on August 26 in Joliet. Ex. 2 ¶ 10. Consistent with Council 31's CBA and the Public Labor Relations Act, 5 ILCS 315/4, the negotiations will address issues such as conditions of employment, but not matters of inherent managerial policy. *Id.*; *see also* ECF 390-1, CBA, art. II, § 1. Council 31's filings fail to advise the Court of these impending bargaining sessions.

Notwithstanding the bargaining procedures available to Council 31 under state law, on August 19, 2024, Council 31 moved to intervene in this litigation as a matter of right under Rule 24(a)(2). ECF 389–390. Council 31 submitted a proposed intervenor complaint that would name as defendants the currently named defendants and three additional Department officials. ECF 390 ¶¶ 4–7. Council 31 contends that the Court could exercise supplemental jurisdiction over its state-law claims. *Id.* ¶¶ 9, 19, 20, 22, 24. Council 31 seeks a declaratory judgment concerning the scope of the Court's preliminary injunction with respect to rights it claims to possess under its CBA and state laws. *Id.* at 10. Consistent with the Court's scheduling order, ECF 391, the Department submits this response in opposition to Council 31's motion to intervene.

## LEGAL STANDARD

To intervene as a matter of right under Federal Rule of Civil Procedure 24(a), a movant must show: (1) "timeliness"; (2) "an interest relating to the property or transaction which is the subject of the action"; (3) that the movant "is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest"; and (4) that

"existing parties [are] not … adequate representatives of the applicant's interest." *Sokaogon Chippewa Cmty. v. Babbitt*, 214 F.3d 941, 945–46 (7th Cir. 2000); *see* Fed. R. Civ. P. 24(a). "The proposed intervenor has the burden of establishing all four elements; the lack of even one requires that the court deny the motion." *Planned Parenthood of Wis., Inc. v. Kaul*, 942 F.3d 793, 797 (7th Cir. 2019). A motion to intervene must "be accompanied by a pleading that sets out the claim or defense for which intervention is sought." Fed. R. Civ. P. 24(c).

## ARGUMENT

Council 31 has failed to establish at least two of the four factors for intervention. First, it has identified no legally cognizable interest because its proposed complaint is entirely barred by the Eleventh Amendment. *See generally Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984). Second, the motion is untimely, coming at least five months and potentially years after its duty to intervene was triggered.

I.    **The motion must be denied because the Eleventh Amendment bars Council 31's proposed intervenor complaint.**

The Eleventh Amendment deprives this Court of jurisdiction over the proposed complaint that Council 31 submitted in accordance with Civil Rule 24(c). Council 31 therefore fails to articulate a "legally cognizable interest in the litigation," *Wis. Educ. Ass'n Council v. Walker*, 705 F.3d 640, 659 (7th Cir. 2013), and the motion must be denied.

Council 31's proposed complaint is doomed. First, it merely seeks declaratory relief, ECF 390 at 10, but "a declaratory judgment in not a cognizable cause of action." *Garrard v. Rust-Oleum Corp.*, 575 F. Supp. 3d 995, 1004 (N.D. Ill. 2021). Second, it names only state officials as defendants, ECF 390, ¶¶ 4–7, and proposes to do so under state, not federal, law. *Id.*, ¶¶ 19, 20, 22, 24. Council 31 concedes that its theories of relief sound in state law when it claims only supplemental jurisdiction under 28 U.S.C. § 1367. *See* ECF 390 ¶ 9. But "a federal court cannot

issue relief against a state under state law." *Elim Romanian Pentecostal Church v. Pritzker*, 962 F.3d 341, 345 (7th Cir. 2020) (citing *Pennhurst*, 465 U.S. at 117). The State's immunity against Council 31's proposed claims extends in equal measure to declaratory as well as injunctive relief. *See Council 31 of the Am. Fed'n of State, Cnty. & Mun. Emps. v. Quinn*, 680 F.3d 875, 884 (7th Cir. 2012); *MSA Realty Corp. v. State of Ill.*, 990 F.2d 288, 295 (7th Cir. 1993); *Benning v. Bd. of Regents of Regency Universities*, 928 F.2d 775, 778 (7th Cir. 1991). This Eleventh Amendment defense "is 'jurisdictional' in the sense that a defendant invoking its sovereign immunity deprives a federal court of jurisdiction over the claims against that defendant." *McHugh v. Ill. Dep't of Transp.*, 55 F.4th 529, 533 (7th Cir. 2022). This Court would thus lack jurisdiction over the entire complaint that Council 31 proposes to file.

A motion to intervene that proposes a fatally flawed pleading must be denied. The Seventh Circuit has located this rule under the "interest" required by Rule 24. Namely, "the applicant's interest must be one on which *an independent federal suit* could be based." *Aurora Loan Servs., Inc. v. Craddieth*, 442 F.3d 1018, 1022 (7th Cir. 2006) (emphasis added). The interest must be "legally protectable" in the sense that "the applicant would have 'a right to maintain a claim for the relief sought.'" *Keith v. Daley*, 764 F.2d 1265, 1268 (7th Cir. 1985) (quoting *Heyman v. Exch. Nat. Bank of Chi.*, 615 F.2d 1190, 1193 (7th Cir. 1980)). Similarly, if "it appears to a certainty that the intervenor is not entitled to relief under any set of facts which could be proved under the complaint," then the motion to intervene fails. *Lake Invs. Dev. Grp., Inc. v. Egidi Dev. Grp.*, 715 F.2d 1256, 1258 (7th Cir. 1983). This "any set of facts" formulation was the general pleading standard when *Lake Investors* was decided. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). In short, the proposed pleading required by Rule 24(c) must be capable of surviving a Rule 12 motion, or else the motion to intervene fails.

The rule that a motion to intervene must submit a legally viable pleading is longstanding

and widely adopted. Wright & Miller supports it. *See* 7C Fed. Prac. & Proc. Civ. § 1914 ("The proposed pleading must state a good claim for relief or a good defense."). As early as 1938, reviewing the newly forthcoming civil rules, legal scholars wrote that "[t]he proposed complaint or answer of the intervener must state a well pleaded claim or defense."[2] Many other circuits have also adopted the rule. *See Williams & Humbert Ltd. v. W. & H. Trade Marks (Jersey) Ltd.*, 840 F.2d 72, 75 (D.C. Cir. 1988); *S.E.C. v. Am. Bd. of Trade, Inc.*, 830 F.2d 431, 443 (2d Cir. 1987); *Pin v. Texaco, Inc.*, 793 F.2d 1448, 1450 (5th Cir. 1986); *Rhode Island Fed'n of Tchrs. v. Norberg*, 630 F.2d 850, 854 (1st Cir. 1980).

Applying the rule here does not require any close examination of the proposed complaint's factual allegations. Because the interests Council 31 assert related to the health and safety of its members arise solely under state law and the CBA, they are barred by the Eleventh Amendment. *See Elim Romanian Pentecostal Church*, 962 F.3d at 345; *Benning*, 928 F.2d at 778. And because the proposed complaint would be subject to immediate dismissal, the motion to intervene must be denied. *See Keith*, 764 F.2d at 1268.

The Court also should reject Council 31's modest-sounding request to enter a declaration "stating that the Court's issuance of an unopposed preliminary injunction was not intended to foreclose" the rights of Council 31 and its members under state law and the CBA. ECF 390 at 10. What rights Council 31 and its members might have under public-sector labor law is complex. *See* Section II.C below. Council 31 is not properly before the Court and has not articulated any specific way in which the preliminary-injunction order encroaches on state law. Council 31's request therefore calls for "an advisory opinion upon a hypothetical basis" rather than "an adjudication of present right upon established facts." *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 242 (1937).

---

[2] Edward H. Levi & James W.M. Moore, *Federal Intervention: II. the Procedure, Status, and Federal Jurisdictional Requirements*, 47 Yale L.J. 898, 904 (1938).

## II.     The motion is untimely.

The Court also should deny the motion to intervene because it is not "timely" as required under Fed. R. Civ. P. 24(a). "In evaluating timeliness, [courts] look to four considerations: (1) the length of time the intervenor knew or should have known of his interest in the case; (2) the prejudice caused to the original parties by the delay; (3) the prejudice to the intervenor if the motion is denied; and (4) any other unusual circumstances." *Cook Cnty. v. Texas*, 37 F.4th 1335, 1341 (7th Cir. 2022). All four factors weigh against Council 31 here.

### A.     Council 31 has known or should reasonably have known of its potential interests in this suit for months if not years.

The first factor directs attention to the delay between the time Council 31 should have known of its interest in this matter and the time when it moved to intervene. *See Sokaogon Chippewa*, 214 F.3d at 949. This factor requires a potential intervenor to "move promptly to intervene as soon as it *knows or has reason to know* that its interests *might* be adversely affected by the outcome of the litigation." *Heartwood, Inc. v. U.S. Forest Serv.*, 316 F.3d 694, 701 (7th Cir. 2003) (emphases added). The test thus imposes an objective "reasonableness standard," asking whether potential intervenors were "reasonably diligent in learning of a suit." *Nissei Sangyo Am., Ltd. v. United States*, 31 F.3d 435, 438 (7th Cir. 1994); *see also Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785, 798 (7th Cir. 2013) (intervention denied where the movant "could have missed the implications for his [interests] only if he was willfully blind to them"). Furthermore, the Seventh Circuit's use of the word "might" shows that Rule 24 "requires prompt intervention when the reasonable possibility, not just a certainty, of an adverse effect on the proposed intervenor's interests arises." *Cook Cnty. v. Mayorkas*, 340 F.R.D. 35, 43 (N.D. Ill. 2021) (collecting cases). Courts are to "measure from when the applicant has reason to know its interests *might* be adversely affected, not from when it knows for certain that they will be." *Illinois v.*

9

*Chicago*, 912 F.3d 979, 985 (7th Cir. 2019) (emphasis in original).

Reasonable diligence would long ago have alerted Council 31 of this suit and its *potential* to affect Council 31's interests. The operative Second Amended Complaint was filed on January 7, 2014. ECF 35. It alleged that Stateville housing units "pose[d] a substantial risk of a complete collapse and/or a partial collapse of the overall building's structure," *id.* ¶ 100, calling the long-term viability of Stateville's operation into question. The Court shortly thereafter certified that issue for class-wide treatment. ECF 37 ¶ 4(n). Anyone monitoring the docket would then have seen that, on September 5, 2018, the Department did not object when the Court appointed an independent structural engineer to produce an expert report. ECF 173. While these events may not have notified Council 31 of an immediate need to intervene, Council 31 should have been aware of this litigation and monitoring it for developing risk to its members' interests.

An even more significant event was the public joint status report filed on November 19, 2022. The status report stated that, due to water quality issues, all sinks and showers had been shut off at Stateville. ECF 314 ¶ 7. "Because of the water situation, on October 27, 2022, the IDOC temporarily transferred approximately 390 prisoners from Stateville to other IDOC prisons." *Id.* ¶ 10. Council 31, as the representative of the correctional officers, was obviously aware of this transfer of prisoners, much like the impending transfers that it now decries. ECF 389 ¶ 13. Moreover, diligence would have shown Council 31 that such transfers had become of a subject of dispute in this litigation. Plaintiffs "expressed concern about returning Class Members to Stateville," the Department disagreed, and the prisoners were transferred back. ECF 314 ¶¶ 16–18. The November 19, 2022 status report made clear that Plaintiffs might ultimately demand that Stateville be emptied as relief for alleged Eighth Amendment violations.

These public warning signs came to fruition in spring 2024, at least five months before Plaintiffs moved to intervene. On March 17, 2024, the Department wrote a public letter announcing

10

the Department's proposal to close and rebuild Stateville, estimating that the closure could happen as early as September 17, 2024. Ex. 1. On March 28, 2024, Deputy Director of Labor Relations Erin O'Boyle spoke directly with Council 31 officials about the closure plan and this litigation, including the fact that *Dobbey* class counsel had been threatening to seek a preliminary injunction to expedite transfers out of Stateville. Ex. 2 ¶ 4. Similar conversations between state and Council 31 officials took place on April 5 and April 18. *Id.* ¶¶ 5–6.

More public pronouncements followed these explicit private warnings. On April 26, 2024, the Department issued to COGFA an explanation of its reasons for choosing to close Stateville. Ex. 3. This report included a reference to this litigation and noted that Plaintiffs might "seek immediate removal of the incarcerated individuals from the premise." *Id.* at 5–6. Public hearings were then held on May 10 and June 11, 2024. Representatives of the Department and Council 31 spoke at both hearings. Both the Department's acting director and its general counsel explicitly warned of the possibility of preliminary injunctive relief being awarded to Plaintiffs by this Court. Ex. 6 at 9:1–9, 28:6–29:4. Also at the June 11 hearing, a representative of Council 31 confirmed that Council 31 had "spent some time finding out about the court case" but discounted the risk of any preliminary relief. *Id.* at 81:13–82:1. This admission from Council 31 at the June 11 hearing was consistent with Council 31's press release and report issued May 24, 2024 loudly decrying the Stateville closure. *See* Exs. 4–5.

Council 31 has had "reason to know its interests *might* be adversely affected" by this case, *Illinois v. Chicago*, 912 F.3d at 985, since the November 19, 2022 status report. At the absolute latest, Council 31 learned of the reasonable possibility of an impact on its interests on March 28, 2024, when Council 31 was told that the *Dobbey* Plaintiffs were threatening to seek preliminary relief. Ex. 2 ¶ 4. This warning was reinforced by public statements to the same effect on April 26 and June 11. At the June 11 hearing, in fact, a Council 31 official candidly stated that Council 31

11

was making strategic choices about the relative risk that this litigation posed to its members.

Council 31 did not seek to intervene, ECF 389, until more than five months after the Department issued notice of its plan to close Stateville as early as September 2024, until nearly five months after the March 28 meeting where state officials expressly warned Council 31 that Plaintiffs were threatening to seek a court order to expedite transfers of individuals out of Stateville, and until 21 months after the status report addressing other internal transfers. Courts have found far shorter delays to preclude intervention. In *NAACP v. New York*, 413 U.S. 345 (1973), the Supreme Court held that a 17-day delay—from March 21, 1972, when the proposed intervenors learned of the suit, to April 7, when they moved to intervene—rendered their motion untimely. *Id.* at 360–61, 367. In *Cook County v. Texas*, the Seventh Circuit affirmed a finding of untimeliness based on a delay between a public status report filed on February 19 and an intervention motion filed on March 11, a 20-day time span. 37 F.4th at 1342.

Council 31's argument for pushing the date when its duty accrued to July 31, 2024 both misstates the facts and ignores the governing legal standard. Council 31 argues that it "had no reason to believe this litigation would result in a preliminary injunction" directing closure "until July 31, 2024," when Plaintiffs moved for one. ECF 389 ¶ 20. This assertion is simply false. As explained, Council 31 was expressly warned of the possibility of a preliminary injunction motion on March 28, 2024. Ex. 2 ¶ 4. A public report on April 26 stated precisely the same. Ex. 3 at 5–6. Council 31 argues that later statements by the Department introduce doubt as to how fast, exactly, the Department was planning to act. ECF 389 ¶¶ 21–22. Such facts, even if true, would be legally irrelevant. Once again, Council 31 was under a duty to "move promptly to intervene as soon as it kn[ew] or ha[d] reason to know that its interests *might* be adversely affected by the outcome of the litigation." *Heartwood*, 316 F.3d at 701 (emphasis added). No equivocation by the Department could possibly have eliminated the possibility that *Plaintiffs* might move for preliminarily relief

that could affect Council 31's interests.

Finally, Council 31 alternatively argues that it was not obliged to move to intervene until August 9, 2024, when it learned that the Department would not oppose a narrowed preliminary injunction. ECF 389 ¶ 20. The Seventh Circuit squarely rejected this sort of argument in *Illinois v. Chicago*, 912 F.3d 979, on a strikingly similar set of facts. In that case, Illinois sued the City of Chicago, alleging unconstitutional policing practices, and the parties immediately entered consent decree negotiations. *Id.* at 982. The union representing Chicago police officers was aware of the suit's filing, but it did not move to intervene for another nine months while negotiations continued in its absence. *Id.* Belatedly moving to intervene, the union argued that "the timeliness inquiry should instead run from the time it determined that the State was not protecting its interests." *Id.* at 985. The Seventh Circuit rejected this position. It held that "the mere fact that the precise outcome of the litigation was unexpected does not restart the timeliness analysis." *Id.* at 986; *see also Sokaogon Chippewa*, 214 F.3d at 949 (prospective intervenor was wrong to wait until seeing the terms of the parties' settlement). Council 31's considered choice to wait and see how things would turn out dooms its motion.

**B.      Council 31's tardy intervention would inflict great prejudice on the parties.**

Council 31's choice to sit on its hands has inflicted substantial prejudice on the parties. *See Schultz v. Connery*, 863 F.2d 551, 554 (7th Cir. 1988) (the "relevant determination is the prejudice" flowing from the "*delay* in intervening") (emphasis in original). The public docket reflects that the parties have been attempting to reach an agreed resolution to this case since mid-2015. ECF 116, 124, 125. These negotiations intensified in 2023 and early 2024. ECF 327, 331, 348, 350, 353, 359, 360, 362, 370. After Plaintiffs moved for a preliminary injunction, the parties engaged in mediation regarding the issues raised by the motion. ECF 379, 381–383, 387. The fruit of those negotiations was Plaintiffs' motion for a more narrowly tailored and hence unopposed preliminary

13

injunction order, ECF 384, which the Court granted, ECF 385.

The Seventh Circuit has repeatedly held that it unduly prejudices the original parties to allow intervention after settlement negotiations have reached a culminating point. *See Illinois v. Chicago*, 912 F.3d at 986–87 (finding "manifest" prejudice where the police union delayed intervention while negotiations were ongoing); *Sokaogon Chippewa*, 214 F.3d at 950 ("To allow a tardy intervenor to block the settlement agreement after all that effort would result in the parties' combined efforts being wasted completely."); *Ragsdale v. Turnock*, 941 F.2d 501, 504 (7th Cir. 1991) ("Once parties have invested time and effort into settling a case it would be prejudicial to allow intervention."); *City of Bloomington v. Westinghouse Elec. Corp.*, 824 F.2d 531, 535 (7th Cir. 1987) ("[I]ntervention at this time would render worthless all of the parties' painstaking negotiations because negotiations would have to begin again and [the potential intervenor] would have to agree to any proposed consent decree."). Council 31 knew or could easily have known for years of the settlement negotiations that could affect its interests and did nothing.

**C.      Council 31 is not prejudiced by leaving questions of state labor law to state forums.**

Council 31 would suffer no prejudice from a denial of its motion to intervene because it has "other, arguably better, legal routes available" to assert its rights. *Cook Cnty. v. Texas*, 37 F.4th at 1343. Council 31 itself names some of the state-law procedures available to Council 31 that are beyond this Court's jurisdiction. *See* ECF 389 ¶¶ 14, 16. For example, the CBA gives Council 31 a right to a layoff notice to initiate formal negotiations, ECF 390-1 art. XX, sec. 3(*l*), and the Public Labor Relations Act requires the State to bargain concerning the impact of the layoff on Council 31 members, while at the same time reserving to the State "matters of inherent managerial policy." 5 ILCS 315/4; *see also* 5 ILCS 315/7; Ex. 2 ¶ 10.

Council 31 fails to mention that *four days* before it moved to intervene, the State formally

opened bargaining with Council 31 over the impact of moving Stateville prisoners. Ex. 7. The State emphasized that it was "committed to bargaining the impact of the State's decision expeditiously and in good faith." *Id.* at 1. The State noted that "no IDOC employees will lose their State employment as a result of the State's plan for Stateville," in large part due to the availability of jobs at another facility "on the Stateville grounds." *Id.* And the very day Council 31 filed this motion, the parties agreed to meet on August 26 to begin bargaining. Ex. 2 ¶ 10. Intervention here is entirely unnecessary to vindicate whatever rights Council 31 may have under state labor law.

D.     **No other unusual circumstances counsel in favor of intervention.**

Finally, no "other unusual circumstances" exist that would excuse Council 31's untimely intervention as soon as it became aware of the possible effect on its interests. The four-factor test for timeliness originated in the Fifth Circuit, which cited as an example of "unusual circumstances" "a convincing justification for [the movant's] tardiness, such as that for reasons other than lack of knowledge he was unable to intervene sooner." *Stallworth v. Monsanto Co.*, 558 F.2d 257, 264–66 (5th Cir. 1977). Council 31 can point to nothing like that here. Council 31 is a sophisticated party, represented by seasoned litigators, and could have filed a motion to intervene at any time.

**CONCLUSION**

For the foregoing reasons, Council 31's motion to intervene should be denied.

Dated: August 23, 2024                                   Respectfully submitted,

R. Douglas Rees                                          KWAME RAOUL,
Isaac Freilich Jones                                     Attorney General of Illinois, on behalf of
R. Henry Weaver                                          Defendants William Weilding *et al.*
Office of the Illinois Attorney General
115 S. LaSalle St.                                         By:    */s/ R. Henry Weaver*
Chicago, IL 60603                                                 Assistant Attorney General
*richard.rees@ilag.gov*
*isaac.freilichjones@ilag.gov*
*robert.weaver@ilag.gov*
(773) 590-6838