IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LESTER DOBBEY, ABDUL MALIK MUHAMMAD, et al., | ) ) ) | |
| Plaintiffs, | ) ) | No. 1:13-cv-01068 |
| v. | ) ) | Judge Andrea R. Wood |
| WILLIAM WEILDING, et al., | ) ) ) | |
| Defendants. | ) | |

**AFSCME COUNCIL 31's REPLY IN
SUPPORT OF ITS MOTION TO INTERVENE**

American Federation of State, County, and Municipal Employees, Council 31, AFL-CIO ("AFSCME Council 31" or "Council 31") submits this Reply In Support of it Motion to Intervene in response to the oppositions of Plaintiffs and Defendants.

**I.      Introduction**

The transfer of all incarcerated individuals from Stateville Correctional Center ("Stateville") by the Illinois Department of Corrections ("IDOC" or the "Department") will cause the elimination of several hundred State positions occupied by State employees. The transfer will also measurably increase the risk that correctional personnel at the receiving institutions will suffer bodily harm because the State proposes to transfer significant numbers of incarcerated individuals to some of the most understaffed correctional facilities in the State. The State has already notified the Union that positions will be eliminated, and it has begun the transfer of incarcerated individuals over Council 31's objections.

Council 31 and its members seek intervention in this case to protect their right to earn a living and to protect their safety and health at work. As outlined in the Intervenor Complaint (Doc. #390), these interests are directly protected by the State's constitution and statutory law, and by the Union's collective bargaining

agreement ("CBA").

One fundamental principle of collective bargaining is that bargaining must occur at a meaningful time. *First National Maintenance Corp. v. NLRB*, 452 U.S. 666, 681-682 (1981). In the instant case, that would be before employees are laid off or before the influx of new incarcerated individuals at a receiving institution raises the risk that correctional officers will be injured or maimed at work. Council 31 does not seek damages or injunctive relief against the State or any individual officer of the State in the instant case.[1] Rather it seeks standing before this Court to ensure that the transfer deadline in the preliminary injunction is not used by the State to eliminate the Union's remedies if the State does not comply with State law and its CBA. Such relief does not offend the Eleventh Amendment because it does not require the Court to take action against any State official. Indeed, such relief is consistent with the purpose of the Eleventh Amendment because it gives deference to the State constitutional and statutory law and the State courts.

In the instant case, the State consented to a preliminary injunction that set a firm deadline for the transfer of incarcerated individuals regardless of whether bargaining had been completed or appropriate measures had been put in place to assure the safety of the workforce. Neither the Union nor its members were "at the table" when this agreement was made. The Court should make it clear that this agreement does not foreclose the Union's right to represent its members. Whether the Court accomplishes this result by virtue of weighing the equities when it enters a final injunction or by modifying the deadline if appropriate circumstances arise, is irrelevant. Both actions are clearly within the power and jurisdiction of the Court. And, both alternatives support the Union's intervention in this case.

---

[1] Arguably, Council 31 could seek injunctive relief if the State's ultimate actions constitute an impairment of its CBA and violates the Federal Constitution. *See Univ. of Hawaii Prof'l Assembly v. Cayetano,* 183 F.3d 1096 (9th Cir, 1999); *Association of Surrogates and Supreme Court Reporters v. New York,* 940 F.3d 766 (2nd Cir., 1991)

## II. Defendants Do Not Contest that Council 31's Motion Meets All the Requirements of Fed. R. Civ. P. 24(a) Other than Timeliness, and In Fact Council 31's Motion is Timely

Council 31's Motion to Intervene establishes that it has "an interest relating to the property or transaction that is the subjection of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest," and that "existing parties [do not] adequately represent its interest. Fed. R. Civ. P. 24(a). Neither Plaintiffs nor Defendants contest that Council 31's motion meets these requirements.

Plaintiffs and Defendants both claim that Council 31's motion is untimely. They are incorrect factually and legally.[2] The triggering event for Council 31's motion was Plaintiffs' motion for a preliminary injunction, and the Court's order granting the motion that stated, *inter alia*, that Defendants had agreed to the order. As Council 31 stated in its motion:

> 20. Council 31 is bringing this motion in a timely fashion. First, while the State announced the closure of Stateville at the end of March 2024, Council 31 had no reason to believe this litigation would result in a preliminary injunction consistent with that intent until July 31, 2024, when the Plaintiffs first moved for a preliminary injunction. And Council 31 had no reason to believe that the State would not oppose the preliminary injunction until they actually received the Court's order on August 9, 2024.
>
> 21. Whether by coincidence or design, the State has consistently sent mixed signals about its intent. At the public hearing in June 2024 before the State Commission on Governmental Forecasting and Accountability ("COGFA"), the plans to close Stateville and Logan Correctional Centers were severely criticized. All of the members of the Commission who attended the meeting thought that the plan was not ready to go forward. The Memorandum issued by the Commission, dated June 14, 2024, is attached to Council 31's Complaint as **Exhibit B**. After the hearings before COGFA, IDOC put out a public statement that indicated that "The Department's goal in announcing it intent to rebuild Stateville and Logan Correctional Center was to present a starting point . . . - not to present a complete plan." The Department also stated at that time that the entire plan was undergoing review. These statements are set forth in the news article, dated June 14, 2024, attached to Council 31's Complaint as **Exhibit C**.

---

[2] Ironically, Plaintiffs allege both that the Motion to Intervene was brought too late and that it was brought too early because a case or controversy does not currently exist.

>     22.     Moreover, days before the Court's Preliminary Injunction order, the Deputy Director of Council 31 and the CMS Deputy Director of Labor Relations agreed that bargaining was premature because the State had not concluded its planning. This correspondence, dated August 5, 2024, is attached to Council 31's Complaint as **Exhibit D**.

(Motion to Intervene at 5-6 (Doc. #389).)

Prior to Plaintiffs' motion for a preliminary injunction, the docket in this case gave no indication that there was a threat of a imminent court-ordered closure of Stateville. The operative complaint in this case, the Revised Second Amended Complaint, filed January 7, 2014 (Doc. #35), alleges that "Defendants possess the power to correct all of the inadequate and hazardous prison conditions Plaintiff has alleged in this Complaint, at any give time, with a posture of due diligence when evaluating job descriptions." (Revised Second Amended Complaint ¶ 129.) There is nothing in the Revised Second Amended Complaint in which Plaintiffs seek the closure of Stateville and the transfer of all the incarcerated individual to other facilities. (*See generally* Revised Second Amended Complaint.) Moreover, it does not appear from the docket that Defendants ever filed an answer to the Revised Second Amended Complaint. Based on the docket, Court conducted settlement conferences began in 2015 and continued until Plaintiffs filed their motion for a preliminary injunction. Because this case was conducted almost entirely by means of these settlement conferences, there was nothing in the docket indicating to the public or Council 31 that closure of Stateville and the transfer of incarcerated individuals to other facilities was a subject of this litigation or was imminent until July 31, 2024.[3]

The State alleges that AFSCME was warned that Plaintiffs might move for a preliminary injunction that might require the transfer of all individuals in custody to other correctional facilities in the State. The State never informed AFSCME that it intended to agree to this Motion. As set forth in AFSCME's Intervenor's

---

[3] Indeed, Council 31 has no idea whether the transfer of all inmates from Stateville was a subject of the settlement conferences between the end of 2022 (when the Court received reports regarding the need for repairs of the buildings at Stateville) and March of 2024, when the Governor announced the plan to close the facility.

Complaint, on August 5, 2024 – the Monday of the week that court issued the unopposed preliminary injunction – the State Director of Labor Relations agreed with the Deputy Director of AFSCME that bargaining was "premature." (Intervenor's Complaint ¶ 30 (Doc. # 390).) The logical conclusion to be drawn from this fact is that the State Director of Labor Relations did not know that the State would agree to an injunction just a few days later. If she did not know that this agreement was imminent, how could AFSCME know?

In *Illinois v. City of Chi.*, 912 F.3d 979, 987-988 (7th Cir. 2019), the Court of Appeals held that a consent decree could not be used to derogate the rights of third parties who might have collective bargaining rights under State law. As the Court noted, this is because a consent decree is basically a contract, and a contract cannot supercede State law, or other state contracts. Council 31 had no idea that the State would use the mechanism of of an unopposed preliminary injunction, either intentionally or not, to make an end run around the Union's state law rights. Since this fact was never disclosed to the Council, it cannot be said that the Council slept on its rights in this case.

In addition, and this cannot be emphasized enough, none of the Defendants in this case – identified in the Revised Second Amendment Compliant as the Stateville Water Supply Operator, Stateville Wardens, and Stateville Chief Engineers – had or have the legal authority to close Stateville and to transfer incarcerated individuals to other facilities. Therefore, there was no reason for Council 31 to believe that this litigation would have those results.

This Court's Order provides: "The Court defers to the Department to develop its own plan to transfer class members and implement that plan in a time and manner of the Department's choosing, provided that the Department completes the required transfers by the Court's deadline of September 30, 2024." (Doc. #386, p. 3.) Accordingly, we are not dealing with a *fait accompli*. This is not a case in which a settlement has been reached resolving the case or a judgement has been entered. IDOC's implementation of the Court's order is

in process and in its early stages. Council 31 has the legal right to bargain with the State about its plan and its effects. Accordingly, AFSCME Council 31's motion to intervene is timely.

The State heavily relies on the Court's opinion in *Illinois v. City of Chi., supra*. There are several differences between that case and this one. First, the contents of the initial Complaint in City of Chicago were specific enough to put the Union on notice that its collective bargaining rights might be undermined by the proceedings. That is not the case here. No complaint in this case sought the closure of the facility or the transfer of all of the incarcerated individuals at Stateville.

Second, the Intervenors Complaint pleads that after the COGFA hearing in June, in response to the severe criticism of the State legislators of the closing, IDOC issued statements to the press that were ambiguous about how the Department would proceed. There is no allegation that after the June press statements that any state official informed the Union that the State intended to agree to a preliminary injunction order.

Third, on August 5, 2024, the State and the Union agreed that bargaining was premature. The Union has often asserted that the transfers of incarcerated individuals poses safety risks to receing institutions and has often initiated legal proceedings to ameliorate those risks under its contract and in State Court. The State's agreement that bargaining was premature is inconsistent with bargaining about the safety issues raised by the transfer, which should logically occur before the risk of assault has been increased, not after. If the State Director of Labor Relations did not know that an agreement to a preliminary injunction was imminent, the Union should not be held to that possibility either.

Finally, the consent decree in *City of Chi.* contained an explicit "carve out" to protect the Union's rights

under its collective bargaining agreement and under the Public Labor Relations Act.[4] The injunction that was issued in this case contains no such carveout.

### III. Plaintiffs and Defendants' Objections to the Intervenor Complaint Are Baseless

Council 31 does not seek damages or injunctive relief against the State or any individual officer of the State action in the instant case. Rather it seeks standing before this Court to ensure that the transfer deadline in the preliminary injunction is not used by the State to eliminate the Union's remedies if the State does not comply with State law and its CBA. Such relief does not offend the Eleventh Amendment because it does not require the Court to take action against any State official. Indeed, such relief is consistent with the purpose of the Eleventh Amendment because it gives deference to the State constitution and statutory law and the State courts.

Let us be clear: Defendants agreed to a preliminary injunction that does not maintain the status quo; in fact, it does the exact opposite by ordering the closure of Stateville and the transfer of its incarcerated individuals to other IDOC facilities by September 30, 2024. We have no indication that the State ever advised the Court that it had obligations under its CBA with AFSCME, State labor and employment law and the State Constitution. The preliminary injunction order undercuts mandatory bargaining between the IDOC and Council 31 because during such bargaining the State is required to maintain the status quo, and there is no way that the IDOC can transfer incarcerated individuals to other facilities without making substantive and possibly draconian changes to the terms and conditions of employment of the workforce represented by Council 31.

Defendants claim that Council 31's Motion to Intervene and its Intervenor's Complaint are barred by the Eleventh Amendment. This is incorrect. This case falls under the exception to the defense articulated by

---

[4] Such a carve out would now have to include the Union's right to assert the rights of its members under the recent amendment to the Illinois constitution, which protects the right to collectively bargain about matters of economic welfare and safety.

the Supreme Court in *Ex parte Young*, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908), which "allows private parties to sue individual state officials for prospective relief to enjoin ongoing violations of federal law." *AFSCME Council 31 v. Quinn*, 680 F.3d 875, 882 (7th Cir. 2012) (citing *MCI Telecomms. Corp. v. Ill. Bell Tel. Co.*, 222 F.3d 323, 337 (7th Cir. 2000)). Here we are seeking declaratory relief, which is comparable to injunctive relief for purposes of the exception.

The Intervenor's Complaint implicitly alleges an ongoing violation of federal law - namely that the State's agreement to the preliminary injunction violates the Contracts Clause of the U.S. Constitution because it denies Council 31 the ability to engage in meaningful bargaining while the status quo is maintained. We are not seeking any payment of funds from the State's treasurer or an order for specific performance of the CBA, which would arguably trigger an Eleventh Amendment bar. What we are seeking is prospective relief that would allow Council 31 to engage in bargaining with the State in accordance with the requirements of the CBA, State labor law and the State Constitution, which falls within the *Ex Parte Young* exception.

A claim for impairment of contract has three elements: (1) the existence of a contractual relationship; (2) the existence of a law that impairs the contractual relational relationship; and (3) the existence of a substantial impairment of the contractual relationship. *Gen. Motors Corp. v. Romein, 503 U.S. 181, 186, 112 S. Ct. 1105, 117 L. Ed. 2d 328 (1992); Univ. of Hawaii Prof'l Assembly v. Cayetano,* 183 F.3d 1096, 1102-1105 (9th Cir, 1999). With respect to the first element, there is no question that Council 31 has a contractual relationship with the State covering IDOC employees. Second, there is also no question that the State's agreement to the preliminary injunction and its issuance by the Court has impaired that relationship. Third, there is no question that this impairment is substantial because it undermines bargaining for several hundred Stateville employees, as well as the IDOC employees at the facilities to which Stateville incarcerated individuals will be transferred. We need to emphasize that "breach of contract" does not encompass the harm

to Council 31. It would surely be the case that in defense to claims against it by Council 31 for violations of the CBA and state labor law that the State would claim that an arbitrator, an administrative agency or a State court lacks the power to tell the State to stop ongoing illegal conduct because of the Court's injunction. The State's agreement to such an injunction has deprived the Union of a remedy for violations of its CBA and State law.

The Court should modify the injunction in this case to make it clear that AFSCME's state law claims are entitled to a full hearing in the appropriate forums, and that the Court will exercise its authority to appropriately reconcile any conflicts between remedies based upon state law claims with the preliminary injunction. This would not require the Court to enjoin any state officials from anything. Nor does the Union ask the Court to resolve these claims. Instead, this course of proceeding would allow the Union to seek any remedies that are appropriate under State law and to demonstrate to the Court that they are consistent with the preliminary injunction, or, in the alternative, counsel a modification of that injunction. Allowing intervention at this point is the most efficient way to reconcile any potential conflicts. Such an exercise of the Courts power in this case is part and parcel of the Court's equitable jurisdiction and is encompassed the need to consider the public interest when it issues both preliminary and permanent injunctive relief. **The most efficient way for the Court to accommodate the interests protected by State Constitutional and statutory law and State labor agreements with the Court's preliminary injunction is to allow Council 31's Motion to Intervene in this case.**

**WHEREFORE**, for the reasons set forth above and in its motion, AFSCME Council 31 respectfully requests that the Court grant its Motion to Intervene.

Respectfully submitted,

By: /s/ Stephen Yokich

            Stephen Yokich
            Robert A. Seltzer

            Attorneys for AFSCME Council 31

Stephen Yokich
Dowd, Bloch, Bennett, Cervone, Auerbach & Yokich
8 South Michigan Avenue, 19th Floor
Chicago, Illinois  60603
Phone: 312-372-1361; cell 312-286-6723
Email: syokich@laboradvocates.com

Robert A. Seltzer
Cornfield and Feldman LLP
25 East Washington Street, Suite 1225
Chicago, Illinois  60602
Phone: 312-236-6640 (direct); 312-218-2511 (cell)
Email:  rseltzer@cornfieldandfeldman.com

**CERTIFICATE OF SERVICE**

Robert A. Seltzer, an attorney, hereby certifies that on August 26, 2024, he caused the foregoing document to be filed electronically with the Court. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's electronic filing system.

/s/ Robert A. Seltzer
Robert A. Seltzer