**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| LESTER DOBBEY, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. 13-cv-01068 |
| v. | ) | |
| | ) | Judge Andrea R. Wood |
| WILLIAM WEILDING, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

The American Federation of State, County and Municipal Employees, Council 31's motion to intervene [389] is denied. This Order focuses on the putative intervenor's request for intervention via the intervenor complaint. To the extent any additional issues raised by the supplemental request [405] are not captured here, those issues will be addressed at the hearing scheduled for September 24, 2024. See the accompanying Statement for details.

## STATEMENT

Plaintiffs in this certified class action under Federal Rule of Civil Procedure 23(b)(2) are prisoners allegedly suffering under unconstitutional conditions of confinement at Stateville Correctional Center ("Stateville"), in violation of their Eighth Amendment rights. Among other reported conditions, Plaintiffs have been exposed to falling concrete and other hazardous structural conditions that pose a threat to their physical safety, as well as water safety issues, mold, vermin, and excessive temperatures. Therefore, Plaintiffs seek injunctive relief against the Defendant officials of the Illinois Department of Corrections ("IDOC"). Recently, this Court entered an unopposed preliminary injunction requiring the transfer of class members from Stateville to other IDOC facilities by September 30, 2024. Now, the union representing Stateville correctional officers and other Stateville employees, the American Federation of State, County and Municipal Employees, Council 31, AFL-CIO ("Council 31"), seeks to intervene as of right pursuant to Federal Rule of Civil Procedure 24(a)(2). (Dkt. No. 389.) For the reasons that follow, Council 31's motion is denied.

### I.    Background

Since 2015, Plaintiffs and IDOC Defendants have been engaged in extensive settlement negotiations in this case that was originally filed in 2013. On March 17, 2024, the IDOC publicly announced a proposal to close and rebuild Stateville and estimated that the closure could happen as early as September 2024.

Concerned by the pace and lack of detailed plans for the closure, on July 31, 2024, Plaintiffs filed a motion for a preliminary injunction asking the Court to require the IDOC to submit a plan outlining how it would transfer or release all class members by September 20, 2024, due to the dangers posed to inmates from the structural deterioration of several Stateville buildings.

Upon receipt of the motion, the Court directed the parties to meet and confer regarding an expedited briefing schedule, as well as the possibility of reaching a negotiated resolution. The parties opted to explore a negotiated resolution. And on August 9, 2024, Plaintiffs filed an unopposed request for entry of a preliminary injunction ordering the IDOC to transfer all class members (other than those housed in Stateville's healthcare unit) to other IDOC facilities by September 30, 2024. (Dkt. No. 384.) This Court entered the preliminary injunction order on August 9, 2024, the same day it was filed. (Dkt. Nos. 385, 386.) While the preliminary injunction order requires the transfer of all class members, it defers to the IDOC as to the timing and manner of the transfers, provided that they are completed by September 30, 2024.

Ten days after the Court entered the unopposed preliminary injunction order, Council 31, the union representing Stateville correctional officers and other employees, moved to intervene as of right. In its motion and intervenor complaint, Council 31 asserts that the Court's preliminary injunction order requiring the transfer of class members to other IDOC facilities by September 30, 2024, will significantly impact the officers and employees it represents and their interests are not adequately represented by the current parties to this litigation. Consequently, Council 31 seeks to intervene in this case to request that this Court issue a declaratory judgment clarifying that the Court's preliminary injunction order does not foreclose Council 31 and its members from asserting the rights afforded to them under Illinois's constitution, state law, and the collective bargaining agreement ("CBA") between Council 31 and the State.

The Court notes that subsequent to the briefing and argument of its motion seeking "full" intervention based on its intervenor complaint, Counsel 31 filed what it describes as a supplement to its motion. (Counsel 31 Suppl. Mot. to Intervene, Dkt. No. 405.) In its supplement, Councill 31 actually seeks alternative relief in the form of "limited intervention for the purpose of Council 31 being able to request modifications in the Court's preliminary injunction based on its bargaining with the State of Illinois and safety conditions at the correctional facilities to which Statesville incarcerated individuals are being transferred." (*Id.* at 3.) The present order addresses Council 31's original request for intervention via the intervenor complaint. Any additional issues raised by the supplemental request not captured here will be addressed at the hearing scheduled for September 24, 2024.

## II.    Discussion

Intervention as of right pursuant to Rule 24(a)(2) must be permitted where each of the following requirements is satisfied:

(1) the application must be timely; (2) the applicant must claim an interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair

or impede the applicant's ability to protect that interest; and (4) existing parties must not be adequate representatives of the applicant's interest.

*Heartwood, Inc. v. U.S. Forest Serv., Inc.*, 316 F.3d 694, 700 (7th Cir. 2003) (internal quotation marks omitted). It is the applicant's burden to establish all four requirements. *Planned Parenthood of Wis., Inc. v. Kaul*, 942 F.3d 793, 797 (7th Cir. 2019). In evaluating whether an applicant may intervene, the Court "accept[s] as true the non-conclusory allegations of the motion." *State v. City of Chicago*, 912 F.3d 979, 984 (7th Cir. 2019) (internal quotation marks omitted). Plaintiffs and the IDOC Defendants both oppose Council 31's intervention, each highlighting multiple purported shortcomings regarding Council 31's proposed intervention. The Court focuses on two, each of which is dispositive.

## A.     Eleventh Amendment

The main shortcoming with Council 31's effort to intervene is that the union fails to establish that it has a cognizable interest in the litigation. To have an interest warranting intervention as of right, the applicant's "interest must be so direct that the applicant would have a right to maintain a claim for the relief sought." *Keith v. Daley*, 764 F.2d 1265, 1268 (7th Cir. 1985) (internal quotation marks omitted). But the Eleventh Amendment precludes this Court from issuing Council 31's requested declaration of its rights under Illinois state law and the CBA.

Courts have construed the Eleventh Amendment broadly to "guarantee[] that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Council 31 of the Am. Fed'n of State, Cnty. & Mun. Emps. v. Quinn*, 680 F.3d 875, 881 (7th Cir. 2012) (internal quotation marks omitted). Consequently, "if properly raised, the amendment bars actions in federal court against a state, state agencies, or state officials acting in their official capacities." *Id.* (internal quotation marks omitted). Here, Council 31's intervenor complaint names as defendants various state officials acting in their official capacities, and the IDOC Defendants asserts the Eleventh Amendment as a defense.

Nonetheless, states' sovereign immunity under the Eleventh Amendment is not absolute. *Id.* at 882. Relevant here, the doctrine of *Ex parte Young*, 209 U.S. 123 (1908), "allows private parties to sue individual state officials for prospective relief to enjoin ongoing violations of federal law." *MCI Telecomms. Corp. v. Ill. Bell. Tel. Co.*, 222 F.3d 323, 337 (7th Cir. 2000). The *Ex parte Young* doctrine "rests on the premise—less delicately called a 'fiction'—that when a federal court commands a state official to do nothing more than refrain from violating federal law, he is not the State for sovereign-immunity purposes." *Va. Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 255 (2011) (citation omitted) (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 105 (1984)). The Supreme Court has emphasized that the *Ex parte Young* "doctrine is limited to that precise situation." *Id.* Yet that is not the situation presented by Council 31's declaratory judgment claim, which seeks a declaration of rights under state, rather than federal, law. Where a lawsuit is "against state officials on the basis of state law," the doctrine is inapplicable because "[a] federal court's grant of relief against state officials on the basis of state law, whether prospective or retroactive, does not vindicate the supreme authority of federal law." *Pennhurst*, 465 U.S. at 106. And the Seventh Circuit has held that "[d]eclaratory relief should not be awarded where the eleventh amendment bars an award of monetary or injunctive relief;

otherwise the declaratory relief would operate as a means of avoiding the amendment's bar." *Quinn*, 680 F.3d at 884. Accordingly, the Eleventh Amendment precludes this Court from granting the declaration that Council 31 seeks. *See, e.g.*, *Bricklayers Union Loc. 21 v. Edgar*, 922 F. Supp. 100, 109 (N.D. Ill. 1996) ("A federal court may not instruct State officials on how to conform their conduct to State law because such a result would directly conflict with the principles of federalism that underlie the Eleventh Amendment.").

Apparently recognizing the substantial obstacle that the Eleventh Amendment poses to its claim as pleaded in the intervenor complaint, Council 31 pivots in its reply brief to argue that the IDOC Defendants' ongoing violation of the Contracts Clause brings its declaratory judgment claim within the scope of *Ex parte Young*. Specifically, Council 31 contends that the IDOC Defendants' agreement to the preliminary injunction impairs Council 31's ability to bargain meaningfully with the State in accordance with its rights under the CBA and Illinois law. The Contracts Clause of the U.S. Constitution provides that "No State shall enter into any . . . Law impairing the Obligation of Contracts." U.S. Const. art. I, § 10, cl. 1. However, "[t]he Contracts Clause does not create a right to have all contractual claims enforced in federal court. It provides instead that states may not enact any law impairing the obligation of contracts—that is, taking away entitlements that pre-dated the change." *Underwood v. City of Chicago*, 779 F.3d 461, 463 (7th Cir. 2015).

Setting aside that Council 31 first raises the Contracts Clause in its reply brief and its relatively threadbare allegations of a constitutional violation, the Court still concludes that Council 31 has no Contracts Clause claim on the facts here. That is because "[t]he Contracts Clause covers **legislative** as opposed to **executive** action." *Id.* (emphasis added). And the IDOC Defendants' decision not to oppose the preliminary injunction in this case is not a legislative act. *See, e.g.*, *Yellow Cab Co. v. City of Chicago*, 3 F. Supp. 2d 919, 922 (N.D. Ill. 1998) ("By its terms, the Contract Clause applies only to state constitutions, constitutional amendments, statutes, ordinances or any instrumentality of state legislated or delegated authority.") Given the absence of a viable claim pleaded in the intervenor complaint, Council 31's motion to intervene fails.

## B. Timeliness

Even if Council 31 did have a cognizable legal claim to assert in this case, the Court shares Plaintiffs and the IDOC Defendants' concerns regarding the timeliness of Council 31's motion. To determine whether a motion to intervene is timely, a court considers four factors: "(1) the length of time the intervenor knew or should have known of his interest in the case; (2) the prejudice caused to the original parties by the delay; (3) the prejudice to the intervenor if the motion is denied; (4) any other unusual circumstances." *State*, 912 F.3d at 984 (internal quotation marks omitted).

Here, Council 31 arguably should have known that its members had an interest in this litigation no later than March 2024—when the IDOC gave public notice of the proposed closure of Stateville. (Defs.' Resp. to Mot. to Intervene, Ex. 1, Dkt. No. 394-1.) Shortly thereafter, representatives of the IDOC and Council 31 met to discuss this litigation and the potential that Plaintiffs would ask for an order from this Court expediting the transfer of class members out of Stateville. (Defs.' Resp. to Mot. to Intervene, Ex. 2, Boyle Decl. ¶ 4, Dkt. No. 394-2.) Then, at a

public hearing on June 11, 2024, which was attended by Council 31 representatives, the IDOC warned that Plaintiffs would likely seek injunctive relief in this case that would necessitate the relocation of inmates from Stateville. (Defs.' Resp. to Mot. to Intervene, Ex. 6 at 9:1–9, 28:18–24, Dkt. No. 394-6.) Later during that meeting, a Council 31 representative stated that Council 31 "spent some time finding out about the court case" and expressed that he was "very confident" that this Court would not issue an injunction ordering that Stateville inmates be transferred by the end of September. (*Id.* at 81:13–82:1.) Council 31's own statements at the June 11, 2024 hearing reveal that it had researched this litigation and was aware of the possibility that Plaintiffs would soon move for a preliminary injunction along the lines of what this Court ultimately ordered. Thus, the Court finds that, at latest, Council 31 learned of its interest in this litigation by June 11, 2024.

Although Council 31 acknowledges that it was advised that Plaintiffs could move for injunctive relief, it contends that it had no reason to believe that an injunction would actually be entered, particularly without opposition from the IDOC Defendants. Council 31's argument erroneously presumes that timeliness is measured from the point at which the applicant knows with certainty that their interest will be affected. However, "[a] prospective intervenor must move promptly to intervene as soon as it knows or has reason to know that its interests *might* be adversely affected by the outcome of the litigation." *State*, 912 F.3d at 985 (internal quotation marks omitted). Accordingly, timeliness is measured "from when the applicant has reason to know its interests *might* be adversely affected, not from when it knows for certain that they will be." *Id.* That Council 31 expressed confidence at the June 11, 2024 hearing that no preliminary injunction requiring the swift transfer of Stateville inmates would be entered does not rebut that it had knowledge that its members *might* be adversely affected by this litigation. On the contrary, that expressed confidence shows that Council 31 knew its interests could be affected but incorrectly predicted that an adverse outcome would not materialize.

The record leaves little doubt that Council 31 learned by June 11, 2024, of the possibility that Plaintiffs would seek a preliminary injunction requiring the expedited transfer of Stateville inmates and, if entered, such an injunction would impact its members. Nonetheless, it took more than two months to file the present motion on August 19, 2024.[1] Shorter delays than that here have found to weigh against intervention. *E.g.*, *NAACP v. New York*, 413 U.S. 345, 360–61, 367 (1973) (17 days).

Allowing Council 31 to intervene now, after the preliminary injunction has been entered would cause significant prejudice to Plaintiffs and the IDOC Defendants. By the time Council 31 filed its motion to intervene, the IDOC had already begun effectuating the Court's order. Moreover, the preliminary injunction order was the product of extensive negotiations between the parties. The time and effort that the parties have put into resolving this protracted litigation weigh strongly against intervention. *E.g.*, *Ragsdale v. Turnock*, 941 F.2d 501, 504 (7th Cir. 1991) ("After pursuit of litigation for several years, [the parties] expended great effort in working out a settlement to which the proposed intervenors are opposed. Once parties have invested time and

---

[1] Not only was Council 31's motion to intervene filed ten days after the Court entered the preliminary injunction, it was filed twenty days after Plaintiffs initially moved for a preliminary injunction on July 31, 2024.

5

effort into settling a case it would be prejudicial to allow intervention."). By contrast, whatever prejudice Council 31 members face from the resulting changes to their job responsibilities or location of employment are mitigated by the IDOC Defendants' assurance that "no IDOC employees will lose their State employment as a result of the State's plan for Stateville." (Boyle Decl. ¶ 9.) Further, Council 31 continues to bargain concerning the impact of Stateville's closure on its members, and it has failed to explain with any specificity why the protections and remedies afforded its members under the CBA and state law would be ineffective.

With three of the timeliness considerations weighing against Council 31 and no discernable other unusual circumstances in its favor, the Court concludes that Council 31's motion to intervene is untimely. By itself, Council 31's untimeliness warrants denial of the motion.

**III.    Conclusion**

The Court finds that Council 31 has failed to satisfy its burden of establishing that it has a cognizable interest in the litigation and that its application to intervene was timely. For these reasons, the Court denies Council 31's motion to intervene.


Dated:  September 23, 2024

_____
Andrea R. Wood
United States District Judge