IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| LESTER DOBBEY, ABDUL MALIK-MUHAMMAD, CHARLES KENDRICKS, & DONTRELL LOGAN, <br><br>Plaintiffs, <br><br>v. <br><br>LATOYA HUGHES and CHARLES TRUITT; <br><br>Defendants. | Case No. 13 C 1068 <br><br> Judge Andrea R. Wood |

**[PROPOSED] THIRD AMENDED COMPLAINT**

**I. Introduction**

1. Stateville Correctional Center is almost 100 years old. It has not aged well. Birds, cockroaches, spiders, mice, and all their leavings compete with the 1,600 or so inmates for space. Cleaning supplies are too few and too watered down to enable inmates to combat the filth. Ancient, half-clogged, rarely cleaned ductwork spews dusty air or sometimes no air at all. Rain gushes in through cracks in the ceilings and broken windows, seeping into the walls, feeding the mold that permeates the entire facility, and puckering the paint, much of it lead-based. When the paint dries, it cracks and chips, spreading inhalable lead dust throughout the facility. In winter, cold air takes the same routes in as the rain. Threadbare bedding and clothing don't make up for spotty heating. Inmates freeze. All over the prison, ceilings, walls, windows, and support columns are cracked and crumbling,

the victims of age, neglect, and water infiltration. Occasionally, pieces just fall down. Recently, part of the roof in the building housing the inmate school and law library collapsed. Other buildings are already shuttered. These conditions put inmates at an intolerable level of risk. Lester Dobbey has sued to bring them to an end.

## II. Jurisdiction & Venue

2. Subject matter jurisdiction lies under 28 U.S.C. § 1331.

3. Venue is proper in this district under 28 U.S.C. § 1391(b)(2).

## III. Parties

4. **Plaintiff Lester Dobbey.** The Illinois Department of Corrections has housed Lester Dobbey since October 2002. Dobbey has been at Stateville since March 2007. Mr. Dobbey was transferred out of Stateville in 2019.[1]

5. **Plaintiff Abdul Malik-Muhammad**. The Illinois Department of Corrections has housed Abdul Malik-Muhammad since 2001. Muhammad has been at Stateville since 2011. Muhammad was transferred out of Stateville in 2024.[2]

6. **Plaintiff Charles Kendricks.** The Illinois Department of Corrections has housed Charles Kendricks since 2023. Kendricks is housed at Stateville in the infirmary.

---

[1] To keep continuity of reference for Class Members, Mr. Dobbey's name has remained in the case caption even after he was transferred out of Stateville in 2019.
[2] To keep continuity of reference for Class Members, Mr. Muhammad's name has remained in the case caption even after he was transferred out of Stateville in 2024.

7.      **Plaintiff Dontrell Logan**. The Illinois Department of Corrections has housed Dontrell Logan since 2019. Kendricks is housed at Stateville in the infirmary.

8.      **Defendant Latoya Hughes.** Latoya Hughes is the current Acting Director of the Illinois Department of Corrections. She oversees all of the department's facilities, including Stateville. She also sits on the department's advisory board, which, from time to time, receives reports on the conditions at Stateville. Accordingly, Hughes has both knowledge and responsibility for inmate health and safety and for the conditions complained of below. Hughes is named as a defendant in her official capacity only.

9.      **Defendant Charles Truitt.** Charles Truitt is Stateville's current warden. As warden, Williams has knowledge of and responsibility for inmate health and safety and the conditions complained of below. Williams is named as a defendant in both his official and personal capacities.

### IV. Allegations

*A. Stateville Correctional Center*

10.     Stateville Correctional Center is a maximum-security men's prison run by the Illinois Department of Corrections. It is located in Crest Hill, Illinois and sits on 2,200 acres. Stateville shares this space with the Northern Classification

3

and Reception Center and a minimum-security work camp. This lawsuit concerns only Stateville itself—not NRC and not the camp.

11. Stateville has roughly 1,700 inmate beds. About 1,100 inmates reside in the four "quarter units," which are called units B, C, D, and E. Sometimes they are also called Bravo House, Charlie House, Delta House, and Edward House.

12. In addition to the quarter units, there are two other housing units currently in use. One is X-House. X-House was formerly Illinois's death row. It has roughly 96 beds.

13. The final housing unit is F-House, often called the roundhouse. It houses approximately 400 inmates. F-House is a "panopticon," a round building with cells along the walls, one level on top of the other, encircling an interior guard tower. Stateville's F-House is the last panopticon in operation in the United States.

14. Here is the photograph of F House:



4

15. Inmates in F-House shout to each other across the open space, raising the volume to deafening levels.

16. Stateville inmates spend most of their time in their cells with their cellmates. Almost all Stateville inmates are housed two to a cell. Inmates may, if given a pass, leave their cells for work, school, medical care, visits, the law library, meals, or twice weekly, 2.5-hour recreation periods. Passes are rare. Fewer than 5% of inmates participate in education or vocational classes, which are very limited at maximum security prisons in Illinois, and especially rare for inmates with long sentences (like many at Stateville), who must wait in line behind inmates with shorter sentences for educational and vocational opportunities.

17. Lockdowns keep Stateville's inmates in their cells too. Stateville is frequently on lockdown, which prevents visits, calls, and most other opportunities for inmates to get out of their cells.

18. In 2008, Stateville's administrators sought to close the prison. Citing some of the same problems at issue in this lawsuit, Stateville's administrators began the process of closing the facility by giving notice under an Illinois statute governing the closure of state facilities. At the time, the administrators told the press that it would take $108,000,000 to bring Stateville's living conditions up to the standards of other Illinois Department of Corrections prisons.

19. The closure process was abandoned shortly thereafter. In response to the administrators' notice, local organizations afraid of losing jobs (among other things) generated enough political pressure to force Stateville's administrators to

5

keep the prison open. But the underlying problems remain. As of 2013, Stateville's budget still listed $84,000,000 in deferred maintenance. Stateville's longstanding physical problems are understandable. The facility opened in 1925.

### B. Stateville's Conditions

20. What follows is a description of the conditions challenged by this case. Stateville inmates, including Lester Dobbey, have been enduring these conditions since well before Dobbey arrived in 2008. Everyone who works at Stateville, including all the defendants, is aware of them. Inmates file dozens, if not hundreds, of grievances each year about each condition.

21. **Vermin.** Stateville is infested. Mice, birds, cockroaches, spiders, and other insects swarm the prison's cellhouses. All have been present for years. At night, mice, cockroaches, and spiders crawl all over the inmates, keeping them awake. Bites are frequent. Birds defecate throughout the facility and their chirping wakes inmates as early as 3 or 4 am.

22. **Mold.** Mold is everywhere at Stateville. Mold is in the showers. Mold is in the cells, between the paint and the walls. And mold is in the other areas and buildings, including the law library. A July 2014 prison memorandum admits that "[M]ost of the books in the library have some form of mold on them due to the leaking roof."

23. **Food Carts.** Stateville uses carts to deliver food to all inmates during lockdowns and to some inmates who cannot eat in dining areas. The carts are also used to move trash. They are almost never cleaned.

24. **Drinking Water.** The water Stateville makes available to its inmates smells like sewage and has a faint, brown color. Staff and visitors are told to bring their own water. Staffers bring in gallon jugs for themselves. Stateville responds to inmate grievances about the water by saying that the water is piped in from the City of Crest Hill and that the city's water is tested. On information and belief, that testing is done outside the prison. In other words, the water is tested before it passes through Stateville's ancient pipes.

25. **Air.** Stateville's air is contaminated with dust, vermin dander, hair, wool fibers and other filth. It carries lead dust, created when lead paint, long used on the walls, chips and flakes. This air is circulated, often irregularly, through vents that are seldom cleaned.

26. **Cleaning Supplies.** Stateville makes inadequate provision for cleaning supplies in the cellhouses. Inmates are given one watered-down cup of disinfectant per week for their cells, or sometimes nothing. Housing units receive, most of the time, a single bottle of Ajax and a couple of spray bottles a day to clean the common areas, offices, and showers. No regular provision of towels, mops, or paper towels is made. Additional supplies are available for purchase, but only in inadequate quantity. More or less, inmates have no choice but to just push the filth around.

27. **Lead Paint.** Stateville, opened in 1925, has seen many coats of lead paint, including in the cellhouses. The lead is released when water seepage from broken windows and cracked ceilings causes the paint to bubble. Then, when the

paint dries, it cracks and chips. Those chips become dust. The dust gets everywhere. Inmates inhale it. And when it gets on their hands and they eat, they ingest it too.

28. **Heat.** When it gets cold outside, Stateville inmates freeze. Cold air has many routes into the cellhouses—broken windowpanes, windows that no longer fit in their frames due to warping and settling of the buildings, cracks in the walls and ceilings, etc. The heating system is inadequate and frequently obstructed. It is obstructed by caked-on layers of filth that block airflow and when inmates, seeking refuge from contaminated air, block the vents. Blankets and coats are never in adequate supply and inmate clothing is notoriously threadbare.

29. **Buildings.** Stateville is falling apart. Many of the buildings in the complex are closed and condemned. Almost all of the cellhouses have long, wide cracks in the ceilings, walls, and floors. Recently, the roof in the clothing room caved in. (The clothing room is in the same building as the inmate school and law library.) The age, years of neglect, and water infiltration have made the cellhouses structurally unsound and unsafe. Physical plant repairs have long been required and long been deferred.

30. **Lighting.** Fluorescent lights cover the cellhouses 24 hours per day. The lights are brighter than necessary for security purposes. The extra illumination has no purpose but to keep inmates awake unnecessarily.

*C. Serious Risks*

31. The challenged conditions, alone and various combinations, place inmates at risk of contracting many serious medical conditions or suffering physical and psychological injury. These include:

32. **Infectious Disease.** Mice, cockroaches, and birds are vectors for serious infectious diseases. Mold can cause infections of the skin, lungs, sinuses, and digestive tract.

33. **Respiratory Disease.** Mice, cockroaches, birds, and their dander and other byproducts are vectors and risk factors for serious respiratory diseases. So is mold. So are lead paint chips. Inmates experience trouble breathing. Inmates with asthma are at particular risk.

34. **Skin Disease.** Contact with vermin feces and mold can cause rashes and infections.

35. **Food-Bourne Illness.** Food contaminated by dirty water, dirty carts, mice, cockroaches, bird dung, or mold can make inmates ill.

36. **Water-Bourne Illness.** Dirty water can cause parasitic infection, spread bacterial disease, and even spread viruses.

37. **Lead Poisoning.** Lead is a poison. That is why lead is no longer used in paint. Lead from paint can be ingested and inhaled in the form of paint chips and paint dust. Once in the body it accumulates and begins to cause problems, up to and including death. Stateville's long term inmates are especially at risk, as they have decades in which to accumulate exposure.

38. **Freezing.** Illinois gets cold in the winter. The lack of an adequate and dependable heating system and the lack of adequate blankets and clothing put Stateville's inmates as risk of exposure related illnesses like pneumonia or frostbite.

39. **Physical Injury.** Parts of Stateville occasionally fall. Windows break and fall inward. Ceilings collapse. Other bits and pieces come crashing down. This structural instability puts inmates at an obvious and obviously serious risk: that of something heavy falling on them. Moreover, the constant leaking of rain water creates a slip-and-fall risk, which, considering that Stateville's interior is all concrete and metal, creates a large risk of head and other injuries.

40. **Psychological Injury.** As Judge Posner put it: "The potential psychological harm from living in a small cell infested with mice and cockroaches is pretty obvious." *Thomas v. Illinois*, 697 F.3d 612, 615 (7th Cir. 2012). Stateville inmates live in small cells infested with mice and cockroaches. They are also surrounded by constant, deafening noise and bright lights. They rarely get out of their infested cells. And when they do, they rarely have anything to do. These conditions put them at risk of psychological injury.

*D. Factors Exacerbating Serious Risks to Inmate Health*

41. Some of the conditions listed above not only pose serious risks themselves, they make Stateville's inmates more vulnerable to the risks caused by other conditions. Also, some aspects of inmate life at Stateville that were not listed above also exacerbate the risks posed by the listed conditions. These exacerbating


factors only increase the seriousness of the risks Stateville's conditions expose its inmates to.

42. **Crowded and dirty conditions enable the spread of contagious disease.** Stateville is overcrowded. Stateville's capacity is around 1,000 inmates, it houses roughly 1,600. And Stateville is filthy. Vermin contribute to the filth and the prison's failure to allow inmates to meaningfully clean their cells or to provide them with adequately clean clothing allows the filth to persist. These conditions– close, filthy quarters–encourage the spread of disease, making the risk of disease created by the conditions listed in § VI.D even greater.

43. **Lights, birds, mice, and insects prevent inmates from sleeping, weakening their immune systems.** The birds that infest the high places within Stateville's cellhouses start chirping at 3 or 4 in the morning. The mice and cockroaches that infest the inmate's cells skitter across the floors and bunks all night. And, throughout it all, the fluorescent lights keep going. Inmates have a hard time falling asleep and staying asleep under these conditions. The sleep they do get is low quality. That lack of sleep translates, as it does in all people, into a weakened immune system, making the risk of disease created by the conditions listed in § VI.D even greater.

44. **Delayed medical treatment can turn minor injuries, infections, and diseases into serious ones, and serious ones into life threatening ones.** When it comes to medical professionals, Stateville is and has been understaffed for years. At the same time, the amount of care required is increasing, as Stateville's

population gets older. This problem of supply and demand has long contributed to delays in care. These delays exacerbate many of the risks described above. For example, a skin rash or infection, if treated swiftly may require nothing more than a cream or a prescription for antibiotics. But, if left to fester, that same condition might later require more drastic or lengthy treatment or even become life threatening.

45. **Inadequate heat depresses inmate's immune systems making them more susceptible to illness.** Severe cold weakens the body and depresses the immune system. When Stateville's inmates get cold, they also grow more susceptible to the various serious illnesses that Stateville exposes them to. Accordingly, Stateville's inadequate heating and provision of warm clothing and bedding exacerbates those risks.

46. **Stress depresses inmate's immune systems making them more susceptible to illness.** Stress reduces the body's ability to fight off illness. Prison, in general, is stressful. But Stateville is worse. It is overcrowded. Dirty. Inmates can't sleep. Inmates in all parts of Stateville, but especially F House, are subject to a constant roar of other inmates shouting to each other. Moreover, inmates cannot readily reduce their stress levels with exercise or activity because Stateville offers very little of those opportunities. Accordingly, inmates at Stateville are under a great deal of immunity sapping stress, and that makes them more susceptible to the serious illness that the prison's other conditions constantly expose them to.

*E. Lester Dobbey & His Injuries*

47. Lester Dobbey came to Stateville from another Illinois Department of Corrections facility in March 2007.

48. He has experienced every condition complained of above and has, at numerous times, complained about every condition above to numerous Stateville personnel.

49. Shortly after coming to Stateville, Dobbey developed stomach problems, including abdominal pain and blood in his stool. Dobbey has also experienced shortness of breath, tiredness, and a bout of flu-like illness requiring hospitalization.

50. In addition to those physical injuries, Dobbey lives in fear. He is aware of the conditions at Stateville and aware of the risks that they pose. Dobbey was a young man when he entered prison. He fears that, by the time his sentence runs out, he will be so diseased that he will be unable to enjoy life as a free man. This fear has caused Dobbey bodily injuries, including headaches, stomach aches, loss of appetite and loss of sleep.

*F. Class Allegations*

51. The court certified this case as a class action. Dkt. 37.

52. **Class Definition:** All individuals incarcerated at the Stateville Correctional Center at any time since January 1, 2011, and all individuals who will be housed at the Stateville Correctional Center in the Future. This excludes those

incarcerated at the Northern Reception and Classification Center (the NRC) and all other facilities operated by the Illinois Department of Corrections.

53. **Numerosity.** The class is so numerous that joinder of all members is impracticable because Stateville houses approximately 1,600 inmates at any given time.

54. **Commonality.** There are questions of law and fact common to the class, including but not limited to:

   a. Whether the alleged conditions exist at Stateville;

   b. Whether the alleged conditions, alone or in combination, deprive the class of rights protected by the Eighth and Fourteenth Amendments of the United States Constitution;

   c. Whether final injunctive relief is appropriate; and

   d. What final injunctive relief is appropriate.

55. **Typicality.** Kendrick's and Logan's claims and defenses are typical of the class's claims and defenses.

56. **Adequacy.** Kendrick and Logan and their counsel at Loevy & Loevy will fairly and adequately protect the interests of the class.

57. **Rule 23(b)(1)(A).** Individual actions create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class.

58. **Rule 23(b)(2).** The party's opposing the class here have acted and refused to act on grounds that apply general to the class, so that final injunctive relief is appropriate respecting the class as a whole.

## V. Claims

### COUNT I
### Prison Conditions Constituting Cruel and Unusual Punishment
*U.S. Const. amends. VIII & XIV via 42 U.S.C. § 1983*

59. All prior paragraphs are incorporated by reference here.

60. This claim seeks injunctive relief only. It is alleged against the relevant defendants in their official capacities only.

61. All the defendants in this count were and are state actors.

62. All the defendants in this count are aware of all the conditions. The conditions are obvious. And the defendants' duties all require them to be familiar with the conditions of Stateville.

63. By creating these conditions or failing to remediate them, all the defendants in this count have been deliberately indifferent to the serious risks of harm created by the conditions. This exposure to a heightened risk of future injury is, itself, an actionable violation of the Eighth Amendment. Accordingly, all the defendants subjected the class, Logan and Kendrick to the deprivation of a right protected by the United States Constitution.

64. Moreover, the class, Logan and Kendrick have no adequate remedy at law. They are suffering and will continue to suffer irreparable injury unless and until the defendants' constitutional violations are enjoined.

COUNT II
## Prison Conditions Constituting Cruel and Unusual Punishment
*U.S. Const. amends. VIII & XIV via 42 U.S.C. § 1983*

65. All prior paragraphs are incorporated by reference here.

66. This claim seeks injunctive relief equivalent to that sought by count I. The injunctive relief is sought from Defendants in their official capacities only.

67. All the defendants were and are state actors.

68. All the defendants are aware of all the conditions. The conditions are obvious. And the defendants' duties all require them to be familiar with the conditions of Stateville.

69. By creating these conditions or failing to remediate them, all the defendants have been deliberately indifferent to a serious risks of harm created by the conditions. This exposure to a heightened risk of future injury is, itself, an actionable violation of the Eighth Amendment. As is the materialization of that risk leading to physical and psychological injury, as happened here. Accordingly, all the defendants subjected Logan and Kendrick to the deprivation of a right protected by the United States Constitution.

70. Moreover, Logan and Kendrick have no adequate remedy at law. They are suffering and will continue to suffer irreparable injury unless and until the defendants' constitutional violations are enjoined.

## VI. Prayer for Relief

71. On their own behalf and the class's behalf, Kendrick and Logan seek:

   a. A permanent injunction against the appropriate defendants that fixes the unconstitutional conditions at Stateville,

   b. Attorneys' fees and costs, and

   c. Any other relief the court deems proper.

Respectfully submitted,

/s/ Heather Lewis Donnell
Heather Lewis Donnell
*One of Plaintiffs' Attorneys*

Arthur Loevy
Jonathan Loevy
Michael Kanovitz
Heather Lewis Donnell
Maria Makar
LOEVY & LOEVY
311 North Aberdeen Street, Suite 300
Chicago, Illinois 60607
ph. 312.243.5900
fax. 312.243.5902