IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| Charles Kendricks, on behalf of himself and Class Members, <br><br> Plaintiff, <br><br> v. <br><br> LaToya Hughes & Charles Truitt, <br><br> Defendants. | Case No. 13-cv-1068 <br><br> Honorable Andrea R. Wood |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR
PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT**

Michael Kanovitz
Heather Lewis Donnell
Maria Makar
Loevy & Loevy
311 N. Aberdeen St., 3rd Fl.
Chicago, IL
mike@loevy.com
heather@loevy.com
makar@loevy.com

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... i

INTRODUCTION .....................................................................................................................1

    I.    FACTUAL SUMMARY AND PROCEDURAL HISTORY .........................................1

    II.    OVERVIEW OF THE PROPOSED SETTLEMENT AGREEMENT .........................5

        A.  Class Definition .................................................................................................5

        B.  Relief to the Class ..............................................................................................5

        C.  Notice ..................................................................................................................6

        D.  Attorneys' Fees and Costs ................................................................................6

        E.  Release of Liability ............................................................................................6

    III.    THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL ......7

        A.  The Class Representatives and Class Counsel Have Adequately Represented the Class .................................................................................................................8

        B.  The Proposal Was Fairly and Honestly Negotiated at Arm's Length .....................9

        C.  The Relief Provided for the Class Is Adequate .........................................................9

        D.  The Proposed Settlement Treats Class Members Equitably Relative to Each Other .........................................................................10

        E.  The Parties Believe the Settlement Is Fair and Reasonable ...................................10

    IV.    THE PROPOSED METHOD OF NOTICE SHOULD BE APPROVED ...................11

CONCLUSION .........................................................................................................................11

# **TABLE OF AUTHORITIES**

Cases:

*Armstrong v. Bd. of Sch. Dirs. of City of Milwaukee*, 616 F.2d 305 (7th Cir. 1980).......................7

*Charvat v. Valente*, No. 12-cv-05746, 2019 WL 5576932 (N.D. Ill. Oct. 28, 2019) .......................9

*Gomez v. St. Vincent Hotel, Inc.*, 649 F.3d 583 (7th Cir. 2011) ........................................................8

*Isby v. Bayh*, 75 F.3d 1191 (7th Cir. 1996)........................................................................................7

*Lippert v. Ghosh*, No. 10-cv-04603 (N.D. Ill. July 23, 2010)............................................................4

*Martin v. Reid*, 818 F.3d 302 (7th Cir. 2016) ...................................................................................8

*Mason v. M3 Fin. Servs., Inc.*, No. 15-cv-04194, 2018 WL 11193175 (N.D. Ill. June 29, 2018) .........................................................................................................9, 10

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985) ...................................................................11

*T.S. v. Twentieth Century Fox Television*, 334 F.R.D. 518 (N.D. Ill. 2020) ...................................8

*Van v. Ford Motor Co.*, 332 F.R.D. 249 (N.D. Ill. 2019)..................................................................8

Rules

FEDERAL RULE OF CIVIL PROCEDURE 23(a)(4)..................................................................................8

FEDERAL RULE OF CIVIL PROCEDURE 23(c)(2)(B).............................................................................11

FEDERAL RULE OF CIVIL PROCEDURE 23(e)......................................................................................7

FEDERAL RULE OF CIVIL PROCEDURE 23(e)(1).................................................................................11

FEDERAL RULE OF CIVIL PROCEDURE 23(e)(2)...............................................................................7, 8

FEDERAL RULE OF CIVIL PROCEDURE 23(e)(2)(D) .........................................................................10

FEDERAL RULE OF CIVIL PROCEDURE 23(h) .....................................................................................6

FEDERAL RULE OF EVIDENCE 706 ....................................................................................................2

## INTRODUCTION

More than a decade ago, then-Stateville resident Lester Dobbey, acting *pro se*, sought injunctive relief on behalf of himself and all others living in the prison due to numerous conditions that violated their Eighth Amendment rights.

In August 2024, Defendants did not oppose a motion for a preliminary injunction to transfer all but a small group of Class Members out of Stateville by September 30, 2024. The Class Members who remain in Stateville are housed in the Healthcare Unit and were not subject to that preliminary injunction. The proposed Settlement Agreement provides relief to these remaining Class Members. IDOC has agreed that no Class Member will be housed in Stateville's current general housing units. As such, the proposed Settlement Agreement provides long-sought relief that both Parties deem appropriate. It is deserving of this Court's approval.

The Court should approve the Settlement Agreement because it represents a fair and arm's length resolution of the claims, achieved through litigation and mediation, and it provides substantial benefits to the Class Members. In accordance with necessary procedures, Plaintiff requests that this Court enter an order that (1) preliminarily finds that the settlement is fair to the Class; (2) provides for sending notice to the Class Members pursuant to the proposed Notice Plan; and (3) sets a date for a fairness hearing and final approval of the Settlement Agreement, on or after January 17, 2025.

### I. FACTUAL SUMMARY AND PROCEDURAL HISTORY

Stateville has been in disrepair and deterioration for decades. The State's third-party vendor that evaluated Stateville and all other IDOC facilities ranked Stateville as having the highest level of deterioration in 2023, noting that there was almost $286 million in deferred maintenance required at the facility at that time. Exhibit 1 (CGL Report) at 19 & fig.13.

1

When Mr. Dobbey sued in 2013, he sought injunctive relief on behalf of himself and Stateville residents to remedy the facility's unconstitutional conditions. Dkt. 1 at 43. Specifically, Mr. Dobbey alleged Eighth Amendment violations as a result of dangerous and unsanitary conditions at Stateville, including poor ventilation, unsanitary drinking water, mold, and pests. *Id.* at 4-27. Mr. Dobbey amended his complaint multiple times. *See, e.g.*, Dkt. 27 (First Amended Complaint); Dkt. 34 (Second Amended Complaint); Dkt. 36 (Revised Second Amended Complaint).

On February 20, 2013, Mr. Dobbey moved *pro se* for class certification. Dkt. 7. Counsel was appointed soon thereafter. *See* Dkt. 21. The Court certified the Class on January 23, 2014, under Federal Rule of Civil Procedure 23(b)(2), to include "all individuals incarcerated at Stateville Correctional Center any time since January 1, 2011, and all individuals who will be housed at the Stateville Correctional Center in the future." Dkt. 37 at 1-2; *see also* dkt. 99 (Class Notice). Loevy & Loevy was substituted as Class Counsel on April 4, 2014. Dkt. 57.

After the Court certified the Class, Plaintiffs engaged in years of litigation and mediation. In 2018, the Court granted Plaintiffs' motion for an appointed structural engineering expert. The Court appointed expert Bruce Kaskel to evaluate Stateville, pursuant to Federal Rule of Evidence 706. Dkt. 173. The Honorable Robert M. Dow, Class Counsel, Defendants' counsel, Stateville personnel, and Mr. Kaskel toured Stateville and Mr. Kaskel prepared expert reports soon thereafter. *See* Exhibit 2 (Kaskel Report). Mr. Kaskel identified numerous areas and buildings requiring immediate repairs, such as the masonry, gymnasium roof, and showers in the quarter house. *Id.* Following Mr. Kaskel's evaluation, the Defendants retained Helen Torres & Associates ("HTA") to evaluate the masonry of the quarter houses in the fall and winter of 2021. The HTA expert report was finalized in January 2022, and it identified several structures that required

"immediate repairs." *See, e.g.*, Exhibit 3 (HTA Report) at 6-7 tbl.1. It is Plaintiff's position that IDOC did not address these "immediate action" items. *See id.* at 6-11 tbls.1-4. Finally, in October 2023, Defendants' expert EXP U.S. Services, Inc. ("EXP") performed an "emergency" evaluation of the concrete lintels in the B, C, D, and E-Houses. Exhibit 4 (EXP Report) at 1. EXP also found ongoing structural problems requiring immediate repairs, such as corroding steel reinforcements and the lintels in E-House. *Id.* at 2.

Throughout this time, the Parties engaged in regular settlement conferences. As a result of those negotiations, certain conditions were remedied and/or ameliorated. Of particular note is then-Governor Bruce Rauner's 2016 closure of the panopticon, F House, which had featured prominently among the conditions Class Members sought to remedy. Exhibit 5 (Gov. Rauner Chicago Sun Times). Class Members also negotiated the right to have their individual cells sprayed by the exterminator to address the persistent presence of vermin. In addition, new dishwashers were purchased, and bottled water was distributed to Class Members on a regular basis for drinking.

As a result of settlement negotiations, IDOC also repaired the Quarter House showers, windows, and roof; Health Care Unit roof and shower ceilings; X House showers, windows, and pipe chase; Gym interior walls; Theater Building roof and ceiling tile; Personal Property roof; and Grounds stairs. IDOC also installed bird-blocking metal in the kitchen and pipe insulation in the school building. However, despite these attempts to remedy the conditions, certain conditions persisted due to the age and deterioration of the facility—not least of which was the physical condition of the Quarter House, where the majority of Class Members resided.

Over the decade of this case, IDOC reclassified Stateville from a maximum facility to a maximum/medium facility and began to increase the educational programs offered to Class

Members. IDOC also regularly reduced the population at Stateville, resulting in a decrease from approximately 1,300 Class Members to just under 425 by the summer of 2024.

On March 15, 2024, Governor J.B. Pritzker and IDOC announced plans to close and rebuild Stateville. Exhibit 6 (Governor Pritzker Press Release Announcing Closing of Stateville dated March 15, 2024). On April 26, 2024, IDOC submitted its recommendation to the Commission on Governmental Forecasting and Accountability ("COGFA") that acknowledged the structural risks Class Members faced while living at Stateville. Exhibit 7 (IDOC Recommendation to COGFA). Class Members continued to live in fear for their health and safety.

On July 31, 2024, Class Members moved for a preliminary injunction. *See* dkt. 372, 373. Specifically, Class Members requested that the Court enter an order directing IDOC to develop a plan to transfer all Class Members from Stateville to another facility and/or release and effectuate such plan by September 20, 2024. Dkt. 373 at 29. On August 9, 2024, the Class sought, and the Court entered, an unopposed preliminary injunction order requiring IDOC to transfer all Class Members (except those housed in the Stateville Healthcare Unit) by September 30, 2024. Dkt. 386 at 2.[1]

IDOC has complied with transfers pursuant to the Court's preliminary injunction order. The remaining Class Members are housed in Stateville's Healthcare Unit and therefore were not subject to the August 9, 2024 Order. *See* dkt. 386 at 2. Over the last three months, the Parties have worked to memorialize a settlement and now submit it to the Court for preliminary approval. *See* Exhibit 8 (Settlement Agreement).

---

[1] IDOC is currently under Court monitoring in the *Lippert v. Ghosh*, No. 10-cv-04603 (N.D. Ill. July 23, 2010) for provision of medical care to all IDOC inmates. Accordingly, due to the obligations in that case, IDOC requested additional time to account for the transfer of Class Members in the Stateville Health Care Unit to other IDOC facilities to ensure the continuity of medical care for these Class Members.

4

II.     **OVERVIEW OF THE PROPOSED SETTLEMENT AGREEMENT**

Along with this motion, Plaintiff has attached the Settlement Agreement, Exhibit 8, and attachments to that agreement identified as Exhibits 8A-8C. The Settlement Agreement is a private settlement agreement as defined in the PLRA, and has a term of one year. A general summary of the proposed Settlement Agreement is as follows:

    **A. Class Definition**

The definition of the "Class" in the Agreement is unchanged from the class certified by the Court in its certification order, dkt. 37:

> "The Class in this matter shall be defined as all individuals incarcerated in Stateville Correctional Center at any time since January 1, 2011, and all individuals who will be housed at the Stateville Correctional Center in the future." This Class excludes all individuals incarcerated at the Northern Reception and Classification Center as well as other facilities operated by the Illinois Department of Corrections.

Pursuant to this Court's Preliminary Injunction Order, dkt. 386, IDOC transferred all those housed in Stateville to other IDOC facilities by September 30, 2024, with the exception of individuals housed in Stateville's Healthcare Unit. *Id.* at 2. Accordingly, there are approximately twenty remaining Class Members.

    **B. Relief to the Class**

Pursuant to the terms of the Settlement Agreement, IDOC has agreed that it will not repopulate Stateville's current general housing units while the settlement remains in effect. The Department may continue to operate Stateville's Health Care Unit and use that Health Care Unit in its discretion to provide medical treatment to Class Members who currently remain housed in the Health Care Unit, or other individuals in custody.

IDOC has acknowledged that there were approximately $250 million in deferred repairs that would need to be made to Stateville to be safe to reside in and has further determined that its resources would be better spent on building a new facility rather than attempting to repair

Stateville's outdated facilities. Exhibit 7 (IDOC Recommendation to COGFA) at 2-3; Exhibit 9 (6/11/24 Transcript from the Commission on Governmental Accountability and Forecasting (COGFA) Townhall Meeting) at 5:9-16:3. Accordingly, IDOC has already issued a request for proposal to start the demolition and construction process.

### C. Notice

The Parties have also agreed to a Notice Plan that the Parties support as the best practicable plan to apprise Class Members of the Settlement Agreement and their right to object to the Settlement Agreement. Using IDOC housing records, the Parties have identified the remaining Class Members—those who are still living in Stateville following the expiration of this Court's preliminary injunction, *see* dkt. 386.

The Notice Plan provides that personal notice will be given to each Class Member. Class Members will have until 14 calendar days prior to the date of the Final Approval Hearing to file objections to the Settlement Agreement. As discussed further in Section III, the Parties' Notice Plan satisfies the requirements of due process and Rule 23 by apprising Class Members of their right to file objections to the Settlement Agreement. The Notice is attached to Exhibit 8 (Settlement Agreement) at 14.

### D. Attorneys' Fees and Costs

The Settlement Agreement further provides that Class Counsel will receive $275,000.00 in attorneys' fees for more than ten years of representation. *See* dkt. 58. Consistent with Rule 23(h), Class Counsel will file a separate motion for attorneys' fee.

### E. Release of Liability

In exchange for the relief described above, each Class Member will be deemed to have released and forever discharged Defendants from any and all claims or causes of action for

6

injunctive relief for violations of federal, state, or other law (whether in contract, tort, or otherwise, including without limitation statutory, common law, property, and equitable claims) that have been brought against the Released Parties in this Lawsuit. Class Members do not release any claims for monetary damages that they may have and/or may pursue that may relate to any injury or damages that may have been allegedly caused by conditions at issue in this Lawsuit.

### III. THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

Federal courts favor "the settlement of class action litigation." *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996). The Court should approve the proposed Settlement Agreement because it provides substantial relief to Class Members—namely by remedying all the conditions that were alleged to violate Class Members' constitutional rights, including the safety of the water, exposure to excessive temperatures, vermin, mold and structural safety at Stateville, by providing that they will not be housed in Stateville's general housing unit for the duration of the agreement.

Rule 23(e) requires judicial approval of a proposed class action settlement based on the Court's finding that the agreement is "fair, reasonable, and adequate." FED. R. CIV. P. 23(e)(2); *see also Armstrong v. Bd. of Sch. Dirs. of City of Milwaukee*, 616 F.2d 305, 313 (7th Cir. 1980). This settlement meets Rule 23(e)'s criteria due to the time, expense, and impracticality of trying individual transfer requests for each Class Member. Rule 23(e) further requires that the court considers whether (1) the class representatives and class counsel have adequately represented the class; (2) the proposal was negotiated at arm's length; (3) the relief provided for the class is adequate; and (4) the proposed settlement treats class members equitably relative to each other. As discussed below, these additional factors are met here.

The Seventh Circuit has instructed that district court review under Rule 23(e) is a "two-step process." *Armstrong*, 616 F.2d at 314. The first step consists of a "preliminary, pre-

notification hearing to determine whether the proposed settlement is within the range of possible approval." *Id.* (internal quotation marks omitted). The second step is the fairness hearing. *Id.*; *see also* FED. R. CIV. P. 23(e)(2). Before its final approval of the Settlement Agreement, the Court will evaluate the following factors:

> (1) the strength of the class's case, (2) the complexity and expense of further litigation, (3) the amount of opposition, (4) the reaction of class members to the settlement, (5) the opinion of competent counsel, and (6) the stage of the proceedings and the amount of discovery that was completed.

*Martin v. Reid*, 818 F.3d 302, 306 (7th Cir. 2016). For the reasons explained below, each factor also supports the Court's preliminary approval of the proposed Settlement Agreement.

### A. The Class Representatives and Class Counsel Have Adequately Represented the Class

Here, the Class Representative and Class Counsel have adequately represented the Class. *See* FED. R. CIV. P. 23(a)(4). The adequacy inquiry consists of two components: "(1) the adequacy of the named plaintiffs as representatives of the proposed class's myriad members, with their differing and separate interests, and (2) the adequacy of the proposed class counsel." *Gomez v. St. Vincent Hotel, Inc.*, 649 F.3d 583, 592 (7th Cir. 2011).

Both criteria are met in this case. The named Plaintiff, Charles Kendricks, *see* dkt. 422, represents the members of the Settlement Class. In seeking the transfer of individuals out of Stateville and guarantees that individuals will not be housed in the general housing units, the Class Representative has had the interests of the Class Members in mind at every stage of litigation. *See T.S. v. Twentieth Century Fox Television*, 334 F.R.D. 518, 534 (N.D. Ill. 2020) (explaining that the "claims and interests of the named Plaintiffs must not conflict with those of the class, [and] the class representatives must have sufficient interest in the case" (quoting *Van v. Ford Motor Co.*, 332 F.R.D. 249, 282 (N.D. Ill. 2019))). Nor are there any conflicts of interest between the Class Representative and Class Members.

8

Additionally, counsel has adequately represented Class Members. First, there is no conflict of interest between Class Counsel and Class Members; all of the alleged unconstitutional conditions have been addressed by both the transfer of most (former) Class Members out of Stateville and the agreement that IDOC will not repopulate Stateville's current general housing units. Second, Class Counsel engaged in extensive investigation and interviews of Class Members throughout litigation to fully understand the strengths and weaknesses of the claims. This included retaining Bruce Kaskel to evaluate the Stateville facility in 2018, *see* Exhibit 2 (Kaskel Report), and remaining in close communication with Class Members. Third, Class Counsel intensively litigated and sought to mediate Class Members' claims for more than a decade, seeking evidence of conditions in Stateville, IDOC's action (or lack thereof) in response, and most recently securing a preliminary injunction to transfer or release almost all Class Members. *See* dkt. 373, 386.

### B. The Proposal Was Fairly and Honestly Negotiated at Arm's Length

The Parties fairly and honestly negotiated the Settlement Agreement at arm's length. As this Court has observed, the Parties have engaged in "a lengthy period" of "adversarial and contentious" litigation and mediation. *Charvat v. Valente*, No. 12-cv-05746, 2019 WL 5576932, at *5 (N.D. Ill. Oct. 28, 2019). For several years, the Parties engaged in regular settlement conferences in attempt to resolve this matter. And both Parties were represented by "experienced attorneys familiar with the legal and factual issues of this case." *Mason v. M3 Fin. Servs., Inc.*, No. 15-cv-04194, 2018 WL 11193175, at *1 (N.D. Ill. June 29, 2018); *see also, e.g.*, dkt. 373 at 3 (noting that counsel for both Parties toured Stateville with Honorable Robert M. Dow).

### C. The Relief Provided for the Class Is Adequate

The Settlement Agreement also provides substantial relief to Class Members. Stateville has long been in disrepair, and as a result, Class Members have had to live in extremely dangerous

9

conditions for many years. Since Lester Dobbey first filed his complaint in 2013, *see* dkt. 1, Class Members have, among other things, seen concrete fall from the ceiling, and felt water pour into their living quarters long after outdoor storms abated. The State has already announced plans to rebuild Stateville and, in compliance with this Court's preliminary injunction order, completed the transfer or release of approximately 400 former Class Members. *See* dkt. 386.

### D. The Proposed Settlement Treats Class Members Equitably Relative to Each Other

The Settlement provides the same relief for all current Class Members by providing that they will not be placed in Stateville's general housing units while the settlement remains in effect. As such, the agreement treats Class Members "equitably relative to each other," FED. R. CIV. P. 23(e)(2)(D), to ensure their physical health and safety.

### E. The Parties Believe the Settlement Is Fair and Reasonable

The parties believe that the Settlement is fair and reasonable, for the reasons described above. IDOC has approved the Settlement Agreement. And Class Counsel has long advocated for Class Members to be transferred out of Stateville's general housing units to protect immediate, as well as long-term, threats to their health and safety.

If the parties were to continue to litigate this action through individual claims, each side would expend considerable time and money to prosecute and defend their positions. *E.g.*, *Mason*, 2018 WL 11193175, at *1 ("The Settlement as set forth . . . is fair, reasonable, adequate and in the best interests of the Class Members in light of the complexity, expense, and duration of litigation . . . ."). By contrast, the proposed Settlement Agreement provides relief *now* to all Class Members. In addition to the efficiency of settling the Class Members' claims, providing relief as soon as practicable is critical to ensuring Class Members' safety. *See, e.g.*, Exhibit 3 (HTA Report) at 5-12 (identifying numerous structural issues as requiring "immediate action"); Exhibit 4 (EXP

Report) at 2 (identifying a risk of falling concrete debris in the cellhouse that requires immediate action). Swiftly settling these claims also helps the State focus on rebuilding Stateville.

## IV. THE PROPOSED METHOD OF NOTICE SHOULD BE APPROVED

When a certified class action is settled, the Due Process Clause and Rule 23 require the court to "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. FED. R. CIV. P. 23(e)(1). The notice must contain specific information in plain, easy-to-understand language, including the nature of the action and the rights of class members. *Id.* r. 23(c)(2)(B).

The Parties have agreed to a comprehensive Notice Plan to conform with due process and Rule 23 requirements. Notice will be served personally upon the Class Members who remain in Stateville by directly providing a copy of the Notice to Class Members at their housing unit. The Parties agree that the Notice Plan is the best practicable plan: It is "reasonably calculated under the circumstances to apprise interested parties of the pendency of the action" so that they could object or obtain more information about the action or present their claims. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985).

Because the proposed Notice Plan effectuates direct notice to all Class Members and fully apprises them of their rights, it comports with the requirements of the Due Process Clause and Rule 23. As such, this Court should approve the proposed Notice Plan.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court enter an order enter an order that (1) preliminarily finds that the settlement is fair to the Class; (2) provides for sending notice to the Class Members pursuant to the proposed Notice Plan; and (3) sets a date for a fairness hearing and final approval of the Settlement Agreement, on or after January 17, 2025.

Respectfully submitted,

*/s/ Heather Lewis Donnell*
One of Plaintiffs' Attorneys

Michael Kanovitz
Heather Lewis Donnell
Maria Makar
Loevy & Loevy
311 N. Aberdeen St., 3rd Fl.
Chicago, IL
mike@loevy.com
heather@loevy.com
makar@loevy.com